Order Entered on
July 22, 2022
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| In re: | | | BANKRUPTCY NO. | 22-01558-CL11 |
| | | | Date of Hearing: | July 18, 2022 |
| | PETER SZANTO, | | Time of Hearing: | 2:00 p.m. |
| | | Debtor. | Name of Judge: | Christopher B. Latham |

## ORDER DISMISSING CASE FOR IMPROPER VENUE

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through fifteen (15).

DATED:   July 22, 2022

_____
Judge, United States Bankruptcy Court

Page 2  | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                      Case No. 22-01558-CL11

The court has considered Debtor Peter Szanto's various amended bankruptcy petitions and schedules (ECF Nos. 1, 30, 40 & 50), its order to show cause why this case should not be dismissed for improper venue (ECF No. 39), Debtor's response (ECF No. 60), his arguments at the hearing (ECF No. 69), and its own docket.  For the following reasons, it will **dismiss** this case.

### Background

Debtor filed a barebones Chapter 11 petition on June 10, 2022 (ECF No. 1).  That asserts he lives at 4484 Dulin Place, Oceanside, CA 92057 (the "Oceanside Property").  *Id.*  And it contends venue is proper in the Southern District because over the last 180 days before filing, he has lived in this district longer than in any other.  *Id.*

Debtor filed his balance of schedules on June 24, 2022 (ECF No. 30).  Those disclose his ownership of the Oceanside Property, and another located at 11 Shore Pine Drive, Newport Beach, CA 92657 (the "Newport Beach Property").  *Id.*  Relevant here, they also claim that Debtor is a self-employed realtor and property lessor who has worked in Oceanside for three years.  *Id.*  Belying that assertion, however, Debtor scheduled no income from selling or renting homes.  *Id.*  Rather, his only income derives from Social Security and stock dividends and interest.  *Id.*  His expenses exceed those funds, resulting in a negative net monthly income.  *Id.*  Debtor also declares $0 in income in 2020, $24,000 in 2021, and $0 from January 1, 2022, to filing.  *Id.*

On June 28, 2022, the court entered an order to show cause why this case should not be dismissed for improper venue (ECF No. 39) (the "OSC").  That arose after the court was made aware by Debtor's largest creditor, JPMorgan Chase Bank ("Creditor") of his contrary representations to several other courts about his residence, domicile, and place of business.  *Id.*  More specifically, from December 2020 through July 2022, Debtor had repeatedly told several courts that he lived at the Newport Beach Property.[1]  *Id.*  Based on those statements, the court ordered him to show cause why venue was proper in this district – which does not include Newport Beach – under 28 U.S.C. § 1408.  *Id.*

Reacting to the OSC, Debtor amended his petition on June 30, 2022 (ECF No. 40).  There, he asserts venue is proper in the Southern District because over the last 180 days he has lived in the district longer than any other *and* has his principal place of business here.  *Id.*  Debtor amended his petition again on July 5, 2022 (ECF No. 50).  That provides no new, pertinent information.

---

[1] Although not an attorney, Debtor is a very litigious man.  He has filed four bankruptcies, including the present one.  Case Nos. 8:13-bk-11148-CB (Bankr. C.D. Cal. 2013), 13-51261-GWZ (Bankr. D. Nev. 2013), 16-33185-PCM7 (Bankr. D. Ore. 2016), 22-01558-CL11 (Bankr. S.D. Cal. 2022).  And he is extraordinarily active in the California, Oregon, Nevada, and Minnesota state and federal courts.  In 2016, the Ninth Circuit's Bankruptcy Appellate Panel ("BAP") attempted to discover all the lawsuits he was a party to.  At that time, it was able to find 76 cases nationwide involving a party named "Peter Szanto."  *In re Szanto*, BAP No. NV-14-1517, 2016 WL 3209463, at *1 n.3 (B.A.P. 9th Cir. May 31, 2016).  Debtor acknowledged that he was a party to at least 15 or 20 of those.  *Id.*  As well, several courts have found him to be a serial or vexatious litigant.  *In re Szanto*, B.A.P. No. OR-20-1106, 2021 WL 1329435, at *1–*7, n.2, 8, 9 & 10 (B.A.P. 9th Cir. April 1, 2021) (discussing some of Debtor's litigation history).

Signed by Judge Christopher B. Latham July 22, 2022

Page 3  | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                    Case No. 22-01558-CL11

## Legal Standards, Discussion & Analysis

Bankruptcy venue is proper in the district:

> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.  Put differently, venue is proper in a district where the debtor meets one of four alternative bases during the longest portion of the 180-day period before filing: (1) domicile; (2) residence; (3) principal place of business; or (4) principal assets.  *Id.*  If venue is improper, the court may dismiss or transfer the case either *sua sponte* or on the timely motion of a party in interest.  FED. R. BANKR. P. 1014(a)(2); *see In re Donald*, 328 B.R. 192, 199 (B.A.P. 9th Cir. 2005).

Debtor argues that venue is proper in the Southern District under each of the first three bases (ECF No. 60).  He says his domicile, residence, and principal place of business were all in this district for the longest portion of the 180-day period before filing.  *Id.*[2]

180 days before Debtor's filing was December 12, 2021.  The relevant time period for venue runs from then until June 10, 2022 (the "Relevant Period").  With that in mind, the court analyzes each of 28 U.S.C. § 1408's prongs in turn.

### *Residence*

Residence is undefined by the Bankruptcy Code.  So the court looks to the term's ordinary meaning.  *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011).  "To determine the ordinary meaning of a word, 'consulting common dictionary definitions is the usual course.'"  *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 933 F.3d 1088, 1093 (9th Cir. 2019) (quoting *Cal. All. Of Child & Family Servs. V. Allenby*, 589 F.3d 1017, 1021 (9th Cir. 2009)).  "If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there."  *Id.* (quoting *CVS Health Corp v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017)).  It is presumed that the legislature "says in a statute what it means and means in a statute what it says."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted).

---

[2] At the hearing, Debtor clarified that the present case is solely a "business" and not a "personal" one.  As set forth below in the court's discussion of principal place of business, this distinction is irrelevant.

Page 4  | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                                                    Case No. 22-01558-CL11

Residence is defined as "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn." *Residence*, WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2012); *see Residence*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("The place where one actually lives, as distinguished from domicile; . . . bodily presence as an inhabitant in a given place."); *In re Lewis*, 459 B.R. 281, 288–89 (N.D. Ill. 2011) (same) (citations omitted). The term, as defined, is unambiguous and clear. And although "a person may have multiple residences the 'longer portion' in the venue statute means that only one residence may qualify." *In re Handel*, 253 B.R. 308, 310 (B.A.P. 1st Cir. 2000).

Debtor asserts – by declaration and orally at the hearing – that he lived and resided at the Oceanside Property for the longest portion of the Relevant Period (ECF Nos. 60 & 69). That statement, however, is contradicted by a litany of others made to various courts during that time.[3] A truncated recitation of those assertions is necessary.[4]

On November 18, 2021, Debtor told the Central District of California: "This Court is also the correct venue, because Debtor resides at [the Newport Beach Property] which is the subject of the Notice of Default located within this Division in this District." *In re Szanto*, Case No. 8:21-mc-00031 (C.D. Cal. 2021) at ECF No. 1.

On December 21, 2021, he again alleged in the Central District of California:

---

[3] Bankruptcy Rule 9011 provides: "By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or *unrepresented party* is certifying that to the best of the person's knowledge, information, and belief . . . the allegations and other *factual contentions have evidentiary support* or, if specifically so identified, are likely to have evidentiary support . . . ." (emphasis supplied). For that reason, Debtor must be bound by his own prior representations.

  Further – and despite captioning his papers as motions or applications – Debtor provides a verification at the bottom of each stating, "I declare under penalty of perjury that the foregoing statements are true based on my own personal knowledge" followed by a wet signature. *See, e.g.*, notes 5–9, *infra*. The statements to other courts flatly contradict those made here. A discussion of perjury is beyond the scope of this order. But this is another ground to bind Debtor by his prior assertions.

  Further still, Debtor was apparently successful in obtaining an order (or orders) temporarily restraining Creditor JPMorgan Chase Bank from foreclosing during the Relevant Period based on his statements that he lived at the Newport Beach Property. *See, e.g.*, *Szanto v. JPMorgan Chase Bank, NA et al.*, Case No. 3:18-cv-00939-SI (D. Ore. 2018) at ECF No. 22. Query whether he is now judicially estopped from asserting a contrary position. *See Jogani v. Jogani*, 141 Cal. App. 4th 158, 169 (2006) (discussing judicial estoppel and its elements). That issue, however, is not before the court and so is not discussed further. Yet it is another basis to hold Debtor to his prior statements.

[4] The court exercises its discretion to take judicial notice of proceedings and documents filed in other courts which have a direct relation to matters at issue. FED. R. EVID. 201(b); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014); *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971), *cert. denied,* 404 U.S. 967 (1971).

In re PETER SZANTO                                                    Case No. 22-01558-CL11

> "While the [2016] Bankruptcy continued in Oregon, Szanto relocated to California's Central District . . . . Szanto moved to this Court's jurisdiction in 2017. And he has resided here ever since."

*Szanto v. Quality Loan Service*, Case No. 8:21-cv-01948 (C.D. Cal. 2021) at ECF No. 16.

On January 5, 2022, in a section titled "Loss of Appellant's Residence / Appellant Reduced to Homelessness" Debtor told the BAP:

> The most obvious necessity for restraining Chase's foreclosure efforts is that if the home which is the subject of the Appeal [the Newport Beach Property] is taken from Appellant [here, Debtor], then the basis of the Appeal will no longer be about that unique property . . . whereat Appellant also resides.
>
> . . .
>
> Foreclosure would cause Appellant not merely loss of his property, but also . . . a home which has for 22 years been his residence . . . .
>
> . . .
>
> Additional reasons for restraint of foreclosure arise from the fact that Appellant has no place to move were he to lose his home.

*In re Szanto*, Case No. 22-1001 (B.A.P. 9th Cir. 2022) at ECF No. 1.

The exact same – or extraordinarily similar – statements were made to the: (1) Ninth Circuit on May 31, 2022, June 9, 2022, July 1, 2022, and July 7, 2022;[5] (2) District of Oregon on January 3, 2022, January 24, 2022, February 7, 2022, Feburary 9, 2022, and June 9, 2022;[6] (3) the Oregon Bankruptcy Court on December 16, 2021;[7] (4) the Orange County Superior Court on April 20, 2022, and May 17, 2022;[8] and (5) the California Court of Appeal on June 6, 2022.[9]

---

[5] *Szanto v. United States Trustee*, Case No. 20-36086 (9th Cir. 2020) at ECF Nos. 13, 18, 20 & 21.

[6] *Szanto v. JPMorgan Chase Bank, NA et al.*, Case No. 3:18-cv-00939 (D. Ore. 2018) at ECF Nos. 109, 114, 118, 121 & 124.

[7] *In re Szanto*, Case No. 16-33185-PCM7 (Bankr. D. Ore. 2016) at ECF No. 1215 ("The crisis began when Quality recorded a Notice of Default against Peter Szanto's residence.").

[8] (ECF No. 21) (attaching pleadings from the probate case captioned *In re Szanto*, Case No. 30-2021-01213679-PR-LA-CJC).

[9] (ECF No. 21) (attaching pleadings from an appellate case captioned *In re Szanto*, Case No. G061444).

Signed by Judge Christopher B. Latham July 22, 2022

Page 6 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re Peter Szanto                                                                    Case No. 22-01558-CL11

Beyond those, Debtor has now made similar statements to this court. In his July 21, 2022 request for stay pending appeal, he states:

> [W]hat is at stake is whether Debtor will lose a home in which he has approximately $2 million of equity.
>
> . . .
>
> Thereby, the issue which arises for this Court is allowing Debtor to retain his home during the pendency of the Appeal.
>
> . . .
>
> Loss of Debtor's Residence / Debtor Reduced to Homelessness
>
> . . .
>
> And now Chase and its Trustee seek brutally to compound that clear injury to Debtor by foreclosing on Debtor's home!!

(ECF No. 75).

So then, throughout the *entire* Relevant Period – again, from December 12, 2021 through June 10, 2022 – Debtor repeatedly and consistently held out that he lived and resided at the Newport Beach Property and would be reduced to homelessness if forced to leave.[10] That property is in the Central District of California. Debtor's self-serving statements that he now lives in Oceanside do not overcome the myriad others made in the Ninth Circuit, BAP, District of Oregon, and California state courts.[11] *Dist. Of Columbia v. Murphy*, 314 U.S. 441, 456 (1941) (An individual's declaration "is, of course, to be given full and fair consideration, but is subject to the infirmity of any self-

---

[10] Debtor's opposition attempts to parse language stating that a person's property can be called many things, including a house, dwelling, structure, home, property, habitation, lodging, condo, villa, crib, manse, palace, and residence (ECF No. 60). And he says his prior use of the term "residence" is immaterial as only a synonym for property. *Id.* This strained argument that terminology is immaterial is contradicted in that same paper and others where Debtor argues about the technical distinctions between residence and domicile and his alleged extensive research – not just in this case, but in all – about filing in the proper venue (*see id.*; *see also* ECF No. 56). Tellingly, in his various papers to other courts Debtor avoids referring to the Newport Beach Property by any synonym other than his "home," "residence," and "domicile." *See* notes 4–8, *supra*.

[11] At the hearing, Debtor tried to escape this result by arguing that his statements that he "resides" at the Newport Beach Property do not mean it is his "residence." Again, this argument is nonsensical and contradicted by prior statements. *See, e.g.*, *Szanto v. United States Trustee*, Case No. 20-36086 (9th Cir. 2020) at ECF No. 21 (referring to the Newport Beach Property as his "residence" five separate times). The court thus rejects it as entirely frivolous.

Page 7  | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                    Case No. 22-01558-CL11

serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts.").

There is no credible basis for the court to conclude that Debtor resided in this district for the longest portion of the 180-day period before filing as required by 28 U.S.C. § 1408. Indeed, he did not reside in the Southern District for *any* part of that period. *See Szanto v. United States Trustee*, Case No. 20-36086 (9th Cir. 2020) at ECF No. 21 (On July 7, 2022 – one month after filing the present bankruptcy case – representing that Debtor lived and resided at the Newport Beach Property). Residence is thus not a basis for venue.

*Domicile*

As the Supreme Court has explained,

> Domicile is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted. Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.

*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (cleaned up).

Put simply, "A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)); *see also Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940) ("Domicile, therefore, is made up of residence and intention."). A person may only have one domicile at a time. *Lew*, 797 F.2d at 750–51. And domicile may only be changed by being physically present in the new jurisdiction with the intent to remain there. *See Mississippi Band*, 490 U.S. at 48. This "includes a subjective as well as an objective component, although the subjective component may be established by objective factors." *Gaudin v. Remis*, 379 F.3d 631, 637 (9th Cir. 2004).

Debtor cannot show either prong of domicile. For the same reasons set forth above, he has not established physical presence in the Southern District. Throughout the Relevant Period – and continuing after – he lived, resided, and was physically present at the Newport Beach Property. *See Szanto v. United States Trustee*, Case No. 20-36086 (9th Cir. 2020) at ECF No. 21. That is plainly evidenced by his repeated claims of being reduced to homelessness if Creditor were allowed to foreclose on that house.[12] This, alone, is fatal to his assertion of domicile here.

But even if Debtor could show physical presence, he cannot establish intent to remain. Again, an abbreviated recital of his prior statements is necessary.

---

[12] *See* notes 5–9, *supra*.

Signed by Judge Christopher B. Latham July 22, 2022

Page 8  | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                                          Case No. 22-01558-CL11

On May 31, 2022, relating to the Newport Beach Property, Debtor told the Ninth Circuit:

> Additional reasons for restraint of foreclosure arise from the fact that Appellant has no place to move were he to lose his home.
>
> . . .
>
> Appellant's loss of his home would be irreparable . . . not merely in a loss of a place to live, but also in the permanent loss of those completed, *in-progress and preliminary improvements* with which Appellant has enhanced the subject property. And items, 'on-the (sic) drawing board' for *future* property enhancement . . . which are currently being contemplated and designed . . . . The prospective loss to Appellant's *expectations* regarding his planning as to *his residence* which is the subject of this stay respect [sic] is immense.
>
> . . .
>
> Indeed, *in the last 30 days*, Appellant has entered into an agreement with his water supply utility for a monthly stipend award based on removal of deciduous trees. In other words, Appellant is actively working – despite the threat of foreclosure – to enhance the property and drive down costs of ownership. *New* projects are also being planned.
>
> . . .
>
> In the present circumstances, irreparability is a frightening possibility not merely as to loss of Appellant's home, but also as to his resultant homelessness.

*Szanto v. U.S. Trustee et al.*, Case No. 20-36086 (9th Cir. 2020) at ECF No. 13 (emphasis supplied).

In a June 9, 2022 filing, again discussing the Newport Beach Property, Debtor stated:

> Appellant is attached to his community; has served on the Board of Directors, has friendships and acquaintances in the community.
>
> . . .
>
> Appellant, however, has explained, that beyond loss of a place to live he would also be challenged by: . . . loss of years of planning and preparation for improvement of a unique property to which he has devoted care and his sweat for 22 years, . . . immense difficulty in finding another place to live . . . the uncertainty of where he will work, . . . [and] the loss of the intangible sentimental connection with a place where he raised his children and lived with his now deceased spouse.

Signed by Judge Christopher B. Latham July 22, 2022

In re PETER SZANTO                                                                    Case No. 22-01558-CL11

*Id.* at ECF No. 18.  Again, these statements were repeated (verbatim or in equivalent) throughout and after the Relevant Period to the BAP, District of Oregon, California state courts, and even this court.[13]

Further, Debtor has gone so far as to call the Newport Beach Property his "magnum opus" and even admitted it was his "domicile." *See id.* at ECF No. 20 (magnum opus); *Szanto v. U.S. Trustee et al.*, Case No. 18-cv-00939 (D. Ore. 2018) at ECF No. 118 ("Certainly, if only money were involved, Appellant would not be seeking a stay.  However, Appellant's *domicile*, his own, his building project for more than 22 years are unique, irreplaceable and personally priceless.") (emphasis supplied).

True, evaluating domicile requires investigating a debtor's subjective intent.  *See, e.g.*, *Mississippi Band*, 490 U.S. at 48.  And true, "[o]ne's own declarations regarding intent are pertinent."  *In re Donald*, 328 B.R. at 203.  But "the subjective component may be established by objective factors." *Gaudin*, 379 F.3d at 637.  And self-serving statements "ordinarily will be substantially discounted by the court when inconsistent with objective facts."  *In re Donald*, 328 B.R. at 203; *see also Murphy*, 314 U.S. at 456.

Here, objective factors establish only that Debtor intends to remain at the Newport Beach Property. Why would he continue improvements and make plans for future ones?  Why would he negotiate a stipend with the water utility?  And at bottom, why else would he spend 12 years and countless sums of money litigating in at least eight different courts to stave off a foreclosure of his 22-year residence, a place with indescribable sentimental connection, his magnum opus?  The only logical conclusion is his intent to remain there.

Likewise, his statements of intent to domicile in the Southern District must be discounted – really, wholly rejected – by the other declarations mentioned throughout this order.[14]  He claims his desire to remain in the Southern District is evidenced by: (1) receiving chemotherapy treatments in San Diego or Imperial County; (2) visiting and becoming familiar with the Vista, Oceanside, Carlsbad, Solana Beach, and Del Mar neighborhoods; (3) soliciting property owners in those areas to list their homes for sale through him; (4) visiting the Oceanside library and city hall to become familiar with the town's form of government; and (5) talking with a city councilmember (ECF No. 60).  To the extent those activities are relevant, their genuineness and purported support of Debtor's argument are controverted by his prior statements.

The day before filing, Debtor told the Ninth Circuit that he was "attached to his [Newport Beach] community, has served on the Board of Directors, [and] has friendships and acquaintances in the community."  *Szanto v. United States Trustee*, Case No. 20-36086 (9th Cir. 2020) at ECF No. 18.

---

[13] *See* notes 5–9, *supra*; *see also* ECF No. 75.

[14] The court must note that Debtor's general credibility is extremely low.  He has repeatedly been rebuked for lying to and filing sham documents in other courts.  *See, e.g.*, *In re Szanto*, Case No. 16-33185, 2019 WL 6332372, at *17–19 (Bankr. D. Ore. Nov. 25, 2019); *see also In re Szanto*, BAP No. OR-20-1106, 2021 WL 1329435 (B.A.P. 9th Cir. April 1, 2021).  And, as set forth in this order, he has lied to this court.

Page 10 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                    Case No. 22-01558-CL11

He went on to explain that foreclosure would lead to the "loss of the intangible sentimental connection with a place where he raised his children and lived with his now deceased spouse." *Id.* And he later stated that "any forced, loss-of-home, necessity to move elsewhere would be catastrophic" and involve "harsh psychological devastation." *Id.* at ECF No. 20. Those statements in combination with his intent to continue renovating or improving the Newport Beach Property demonstrate his unflagging desire to remain there, in the Central District.

While the court gives his newly articulated narrative full and fair consideration, it is overcome by objective factors and insurmountably outweighed by statements to other courts before, during, and after the Relevant Period. Debtor has always been physically present and intended to remain in the Newport Beach Property, which lies in the Central District. He cannot show either prong required to establish his domicile in the Southern District. It is therefore not a basis for venue either.

### *Principal Place of Business*

As an initial matter, the court does not see that Debtor's principal place of business is relevant to the present venue determination for at least two reasons. One, "[a] sole proprietorship is not a 'person' for purposes of the Bankruptcy Code because it is neither an individual, nor a partnership, nor a 'corporation.' . . . Since it is not a 'person,' a sole proprietorship is ineligible to be a debtor in bankruptcy." *In re KRSM Props., LLC*, 318 B.R. 712, 717 (B.A.P. 9th Cir. 2004) (citing §§ 101(4), 109(a)–(b)); *see also In re T.W. Koeger Trucking Co.*, 105 B.R. 512, 515 (Bankr. E.D. Mo. 1989) (holding that "because the sole proprietor has no powers beyond that of an individual," it was ineligible to file solely as a business entity). So Debtor's argument that this is only a business case is without merit. And two, a sole proprietorship is not considered a separate entity from the individual. *Jacobs v. Centennial Ins. Co.*, 978 F.2d 1265, 1265 (9th Cir. 1992) (citing MARSH & FINKLE, MARSH'S CALIFORNIA CORPORATION LAW § 2.4 (3d ed. 1990) ("Formation of a sole proprietorship merely involves the dedication of certain of an individual's assets to a business enterprise and does not entail the formation of a separate entity."); *see also Asdourian v. Araj*, 38 Cal. 3d 276, 284–85 (1985) (finding that in essence, a sole proprietorship is the individual). Thus, venue must be evaluated based on Debtor, the individual, not Debtor, the business. The present case is therefore an individual one. Consequently, the court does not see that the principal place of business basis of venue is applicable.

However, even if it were, Debtor has not established that his principal place of business is in the Southern District. First, it is not apparent that Debtor has any business at all. He claims to be a self-employed realtor who also manages residential rentals (ECF No. 30). But his Schedule I discloses $0 in wages and $0 in income from renting property or operating a business. *Id.* Rather, his only income derives from social security and stock dividends or interest. *Id.* Further, Debtor's Statement of Financial Affairs discloses $0 in income from operating a business in 2020, only

Page 11 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                                                           Case No. 22-01558-CL11

$24,000 in 2021, and $0 from January 1, 2022 to filing.[15]  *Id.*  Without a business at all, Debtor cannot have a principal place of business.

He argues against this by claiming a future intent to do business in the Southern District (ECF No. 60).  And he says he has taken several steps in furtherance of that, including: (1) visiting and becoming familiar with the Vista, Oceanside, Carlsbad, Solana Beach, and Del Mar neighborhoods; and (2) soliciting property owners in those areas to list their homes for sale through him.  *Id.*  To the extent Debtor's assertions have any probative value, they cannot establish venue. To start, the venue inquiry looks backward to the 180 days before filing.  During the Relevant Period, Debtor declared $0 in income.  And he has not established any non-income producing business activity.  As to his real estate business, he provides no listing or purchase agreements with, nor any income from, Southern District homeowners.  And as to his rental business, he provides no listing agreement or lease for the Oceanside Property.  Nor could he, because he purports to live in it.[16]  Debtor has no business.  To the extent his self-serving statements purport otherwise, if believed, they are forward looking and entirely too speculative to establish venue under 28 U.S.C. § 1408's third prong.

Second, even if Debtor had established a business, its principal place is not in the Southern District. An entity's principal place of business is its "nerve center" or the place where significant business decisions are made.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010) (holding in the diversity jurisdiction context that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'").  Although the court does not contend that a sole proprietor's principal place of business is *always* the same as its individual's residence or domicile, Debtor's is.  As set forth above, his residence and domicile are the Newport Beach Property.  He has no separate office or business headquarters.  And, as noted on the record at the hearing, Debtor's real estate operation is registered with the California Department of Real Estate with an Irvine mailing address and a main office at the Newport Beach Property.  Exhibit A.[17]  To the extent Debtor had a business during the Relevant Period, he provides no creditable or plausible argument that its location was anywhere other than in the Central District.

---

[15] As an additional historical reference, Debtor filed amended schedules in his District of Oregon bankruptcy on January 2, 2018.  *In re Szanto*, Case No. 16-33185-PCM7 (Bankr. D. Ore. 2016) at ECF No. 316.  Relevant here, his Schedule I income was $0.  *Id.*

[16] Debtor states that he lives in the Oceanside Property.  The court rejected that as uncredible above.  But it is worth noting that – by his own declaration here – he cannot establish an income producing rental business involving his only Southern District property.

[17] The court exercises its discretion to take judicial notice of records on government websites that are publicly available.  FED. R. EVID. 201(b); *Kater v. Churchill Downs, Inc.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018).  It is aware that after the hearing, Debtor altered his registration with the Department of Real Estate to list the Oceanside Property as both his mailing address and main office.  This belated effort does not change the fact that venue is a backward-looking analysis.  *See* 28 U.S.C. § 1408.

Signed by Judge Christopher B. Latham July 22, 2022

Page 12 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                                Case No. 22-01558-CL11

Debtor is an individual with no business during the Relevant Period.  Even if he had a business, it is not in the Southern District.  This is not a basis for venue either.

*Principal Assets*[18]

As with principal place of business, the court is not convinced that Debtor's principal assets are relevant to the present venue determination.  As noted by the D.C. Circuit:

> [T]he term 'principal assets' has a long history under prior law.  It appeared primarily in the context of *corporate* reorganizations, and generally referred to property owned by the *corporation* at the time of filing.

*Barnes v. Whelan*, 689 F.2d 193, 205 (D.C. Cir. 1982) (emphasis supplied) (citations omitted).  Because a sole proprietorship is ineligible to be a Chapter 11 debtor – only the individual – the court doubts that the principal assets basis of venue is applicable here.  *See id.*; *see also In re KRSM Props., LLC*, 318 B.R. at 717.

Even if it were, however, Debtor cannot show that his principal assets are in the Southern District.  The Code does not define the term "principal assets".  Again, the court looks to the term's ordinary meaning.  *AT&T Inc.*, 562 U.S. at 403.  That involves consulting the dictionary.  *Animal Legal Def. Fund*, 933 F.3d at 1093.  It finds that principal is defined as "most important, consequential, or influential."  *Principal*, WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2012); *see Principal*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("Chief; primary; most important).  The term, as defined, is unambiguous and clear.

Quantitatively, Debtor's primary assets are outside the Southern District.  His schedules disclose the following:[19]

| Asset | Value | Location |
|---|---|---|
| The Oceanside Property | $   565,000 | Southern District |
| The Newport Beach Property | $ 4,500,000 | Central District |
| Cash | $       5,023 | Unknown |
| Deposits of Money | $     10,416 | Unknown |
| Retirement Accounts | $   155,268 | Unknown |
| Susan Szanto's Probate Proceeds | $ 5,500,000 | Israel |
| Debtor's Parents' Probate Proceeds | $   500,000 | Central District |
| Claims Against Siblings | Unknown | Central District |

---

[18] Debtor does not assert that his principal assets are in the Southern District.  The court nonetheless addresses this basis for analytical completeness.

[19] Debtor's *de minimis* assets are not included here.

Signed by Judge Christopher B. Latham July 22, 2022

Page 13 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                    Case No. 22-01558-CL11

(ECF No. 30).[20]  The Israeli assets are immaterial to the venue determination.  28 U.S.C. § 1408 ("principal assets in the United States").  So, relevant to the present discussion, Debtor has $565,000 in assets in the Southern District, at least $5,000,000 in the Central District, and $170,707 in an unknown location.  *Id.*  This conclusively demonstrates that his "most important, consequential, or influential" assets are in the Central District.

A qualitative analysis does not change that result.  None of Debtor's assets produce income.  *Id.* Debtor has lived in his $4.5 million Newport Beach Property for the past 22 years (*see, e.g.*, ECF No. 75).  And as long as he can stave off Creditor's foreclosure, he will continue to live there.  He is part of two probate proceedings in the Central District.  His only asset in the Southern District is the Oceanside Property (ECF No. 30).  In no way can it be objectively classified as his primary asset.

To the extent Debtor may assert his principal assets are in the Southern District, it must be rejected. Qualitatively and quantitatively, his most important, consequential, and influential United States assets are in the Central District.  This final prong is not a basis of venue either.

## Conclusion

Debtor has not established venue under any of 28 U.S.C. § 1408's prongs.  The court must thus either dismiss or transfer under Bankruptcy Rule 1014.  *See Thompson v. Greenwood*, 507 F.3d 416, 420 (6th Cir. 2007).  No party asks for a convenience transfer.  Nor does the court see or believe that would be in the interest of justice, given its bad faith and scheme findings on Creditor's stay relief motion (ECF Nos. 72 & 74) and in this order.  Accordingly, the court **dismisses** this case for improper venue.

IT IS SO ORDERED.

---

[20] Debtor's Schedule A/B discloses probate proceeds from his wife's and parents' estates with a combined value of $6,000,000 (ECF No. 30).  In other papers, he asserts his wife's estate is worth $5,500,000 (*see, e.g.*, ECF No. 56).  Through arithmetic, the court deduces the proceeds from his parents' estate are valued at $500,000.  It notes that any increase to the value of his parents' estate would only further support its conclusion that Debtor's primary assets are in the Central District.

Page 14 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                    Case No. 22-01558-CL11

# **Exhibit A**

Page 15 | ORDER DISMISSING CASE FOR IMPROPER VENUE

In re PETER SZANTO                                                      Case No. 22-01558-CL11

## STATE OF CALIFORNIA
## DEPARTMENT OF REAL ESTATE

In reviewing a licensee's information, please be aware that license discipline information may have been removed from a licensee's record pursuant to Business & Professions Code Section 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal of a request, or by calling the Department's public information line at 1-877-373-4542.
The license information shown below represents public information. It will not reflect pending licensing changes which are being reviewed for subsequent updating. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.
Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance with these documents, please contact the Department's Licensing Flag Section.

License information taken from records of the Department of Real Estate on 7/18/2022 4:05:02 PM

| | |
|---|---|
| **License Type:** | BROKER |
| **Name:** | Szanto, Peter |
| **Mailing Address:** | PO BOX 14894<br>IRVINE, CA 92623-4894 |
| **License ID:** | 00576779 |
| **Expiration Date:** | 04/13/25 |
| **License Status:** | LICENSED |
| **Salesperson License Issued:** | 09/24/76 (Unofficial -- taken from secondary records) |
| **Broker License Issued:** | 04/14/01 |
| **Former Name(s):** | NO FORMER NAMES |
| **Main Office:** | 11 SHORE PINE DR<br>NEWPORT COAST, CA 92657 |
| **DBA** | NO CURRENT DBAS |
| **Branches:** | NO CURRENT BRANCHES |
| **Affiliated Licensed Corporation(s):** | NO CURRENT AFFILIATED CORPORATIONS |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |

>>>> Public information request complete <<<<

Signed by Judge Christopher B. Latham July 22, 2022